# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### NO. 08-60014-CR-MIDDLEBROOKS(s)

Magistrate Judge Johnson

18 U.S.C. 1962(d)
18 U.S.C. 1956
18 U.S.C. 1343
18 U.S.C. 1341
18 U.S.C. 2

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **VINCENT F. ARTUSO,** | ) |
| aka "Vinnie," | ) |
| **JOHN VINCENT ARTUSO,** | ) |
| **GREGORY ORR,** | ) |
| **ROBERT M. GANNON, and** | ) |
| **PHILIP EDWARD FORGIONE,** | ) |
| aka "Fip," aka "Flip," | ) |
| | ) |
| **Defendants.** | ) |

_____ )

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At times material to this Superseding Indictment:

1.     The members and associates of the Gambino Organized Crime Family of La Cosa Nostra (hereinafter referred to as the "Gambino Family") were an organized criminal group that operated in the Southern District of Florida, New York, and elsewhere.

2.     The Gambino Family operated through groups of individuals referred to as "crews," "regimes," and "decinas." These crews consisted of "soldiers," that is, persons who had been

formally inducted into the Gambino Family and who were also referred to as "made members." Upon formal induction into the Gambino Family, each member would take an oath of "omerta," vowing never to reveal any information about the Gambino Family and its members and associates. The crews also consisted of non-member associates of the Gambino Family.

3.    The Gambino Family crews were headed by persons referred to as "captains," "capos," "caporegimes," "capodecinas," and "skippers." Each captain was responsible for supervising the criminal activities of his crew, and provided support and protection to crew members and associates. In return, the captain received a share of the illegal earnings of each member and associate of the crew.

4.    Above the captains were the highest-ranking members of the Gambino Family – the "boss," who was the head of the Gambino Family, the "underboss," who served as an assistant to the boss, and the "consigliere," who served as a counselor to the boss. With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes among Gambino Family members, and disputes between Gambino Family members and members of other criminal organizations, and approving all significant actions by members of the Gambino Family. The boss, underboss, and consigliere of the Gambino Family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates, and regularly received reports concerning the activities of the members and associates of the Gambino Family. In return for their supervision and protection, the boss, underboss and consigliere received a share of the illegal earnings of each crew.

5.    The Gambino Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra," and operated through entities known

2

as "families." The ruling body of this nationwide organization was known as the "commission," the membership of which at various times included the bosses of the five New York City-based families, that is, the Bonanno, Colombo, Gambino, Genovese, and Lucchese organized crime families.

<u>ADT Security Services, Inc.</u>

6.    **ADT Security Services, Inc.**, (hereinafter referred to as "ADT") was a Delaware corporation and a wholly owned subsidiary of Tyco International Ltd. ADT's corporate office was located at One Town Center Road, Boca Raton, Florida. ADT provided security services to businesses and residences located throughout the United States and around the world. Such security services included the installation and monitoring of residential and commercial burglar alarms. ADT owned and leased properties for business purposes throughout the United States and the world.

7.    William Larry Horton, aka Larry Horton, was employed by ADT as Vice President of Planning and Implementation and worked at ADT's corporate office located at One Town Center Road, Boca Raton, Florida. Horton's duties included selling properties owned by ADT and leasing properties for the use of ADT.

8.    On or about May 9, 2001, members of the ADT Board of Directors issued a resolution authorizing Larry Horton, subject to further order of the Board, to enter into, execute, and deliver in the name and on behalf of ADT, any and all real estate sale and purchase agreements, as well as any and all real estate lease agreements, together with any related documents, as approved by corporate counsel, without further act or resolution of the Board.

9.    In 2002 and 2003, Larry Horton sold four properties owned by ADT to four different companies, and entered into lease agreements with the four companies, who leased the properties back to ADT for ADT's continued use for business purposes. The four sale and leaseback

3

transactions were for the office buildings and property located at (1) 2801 Gateway Drive, Pompano Beach, Florida (hereinafter referred to as the "Pompano Beach property"), (2) 32100 U.S. Highway 19 North, Palm Harbor, Florida (hereinafter referred to as the "Palm Harbor property"), (3) 3040 Industry Drive, East Hempfield Township, Lancaster County, Pennsylvania (hereinafter referred to as the "Lancaster property"), and (4) 111 Windsor Drive, Oak Brook, Illinois (hereinafter referred to as the "OakBrook property").

The Pompano Beach Property

10.     On or about February 5, 2002, ADT sold the Pompano Beach property to Efficient Realty & Development, L.L.C., which simultaneously leased the property back to ADT, which then became a tenant in the property that it previously had owned.

11.     **Efficient Realty & Development, L.L.C.,** (hereinafter referred to as "Efficient Realty FL") was a Limited Liability Company that was created in Florida on or about December 6, 2001. Defendant **ROBERT GANNON** was the Manager, a Member, and the Registered Agent. The principal place of business was at times listed as 10571 N.W. 66th Street, Parkland, Florida, which was the address of defendant **GREGORY ORR**, and 1690 S.W. 2nd Avenue, Boca Raton, Florida, which was the address of defendant **ROBERT GANNON**. The owners of Efficient Realty FL and their percentage ownership interests were J & G Associates, LLC (50.1%), Longhill Holdings, LLC (20%), CAE Enterprises, Inc. (10%), Bayhill Development, LLC (10%), and Property Futures, Inc. (9.9%).

12.     **J & G Associates, LLC** was a Limited Liability Company that was created in Florida on or about March 15, 2002. Defendant **GREGORY ORR** was the Manager and a Member. Janine Orr, wife of defendant **GREGORY ORR**, was a Member. KCGF Associates, LLC was a Member

4

listed on a filing with the Florida Department of State on or about January 30, 2003. The owners and their percentage ownership interests were KCGF Associates, LLC (60%), defendant **GREGORY ORR** and Janine Orr (40% in 2002 and 2003) and subsequently Orr Family Management Company, LLC (40% in 2004 and thereafter).

13.    **Longhill Holdings, LLC** was a Limited Liability Company that was created in Florida on or about March 15, 2002. Defendant **JOHN ARTUSO** was the Manager. The owner and his percentage ownership interest was defendant **JOHN ARTUSO** (100%).

14.    **CAE Enterprises, Inc.** was a corporation that was created in Pennsylvania on or about May 13, 1999. Philip R. Forgione was the President and Treasurer. Desirae Monacelli was the Vice President and Secretary. The registered office address on the Articles of Incorporation was 1315 North Webster Avenue, Dunmore, Pennsylvania, which was the address of defendant **PHILIP EDWARD FORGIONE**, who is the father of Philip R. Forgione and Desirae Monacelli. The owner and his percentage ownership interest was Philip R. Forgione (100%).

15.    **Property Futures, Inc.** was a corporation that was created in Florida on or about August 1, 2001. Defendant **ROBERT GANNON** was the Director, President, Treasurer, and Secretary listed on filings with the Florida Department of State in 2002 and 2003. Defendant **ROBERT GANNON** was the Registered Agent listed on filings with the Florida Department of State in 2003 and thereafter. Mary Ellen Gannon, wife of defendant **ROBERT GANNON**, was the Director and Secretary listed on filings with the Florida Department of State in 2003 and thereafter. The principal place of business was at times listed as 900 S.E. 8th Avenue, Suite 104, Deerfield Beach, Florida, and 1690 S.W. 2nd Avenue, Boca Raton, Florida, which was the address of defendant **ROBERT GANNON**. The owner and his percentage ownership interest was defendant

**ROBERT GANNON** (100%).

16.    **KCGF Associates, LLC** was a Limited Liability Company that was created in Florida on or about March 18, 2002. Defendant **GREGORY ORR** was the Manager listed on filings with the Florida Department of State in 2003 and thereafter. William Larry Horton and his wife, Janie Marie Horton, were both listed as Members on a filing with the Florida Department of State in 2003, but were deleted on a filing in 2004. The owners and their percentage ownership interests were William Larry Horton (50%) and Janie Marie Horton (50%).

17.    **Orr Family Management Company, LLC** was a Limited Liability Company that was created in Florida on or about October 13, 2003. Janine Orr was the Manager and a Member. Defendant **GREGORY ORR** was the Registered Agent. The principal place of business was listed as 6710 N.W. 101st Terrace, Parkland, Florida, which was the address of defendant **GREGORY ORR**. The owners and their percentage ownership interests were defendant **GREGORY ORR** (49.5%), Janine Orr (49.5%), and Janine Orr (1%).

The Palm Harbor Property

18.    On or about February 5, 2002, ADT sold the Palm Harbor property to Westmore Properties, LLC, which simultaneously leased the property back to ADT, which then became a tenant in the property that it previously had owned.

19.    **Westmore Properties, LLC** was a Limited Liability Company that was created in Florida on or about January 11, 2002. Defendant **JOHN ARTUSO** was the Manager, a Member, and the Registered Agent. The principal place of business was at times listed as 555 S.E. 6th Avenue, Apartment 5F, Delray Beach, Florida, and 6161 N.W. 2nd Avenue, Apartment 417, Boca Raton, Florida, which were the addresses of defendant **JOHN ARTUSO**. The owners and their

6

percentage ownership interests were J & G Associates, LLC (50.1%), Longhill Holdings, LLC (20%), CAE Enterprises, Inc. (10%), Bayhill Development, LLC (10%), and Property Futures, Inc. (9.9%).

The Lancaster Property

20.    On or about February 5, 2002, ADT sold the Lancaster property to Efficient Realty & Development, LLC, which simultaneously leased the property back to ADT, which then became a tenant in the property that it previously had owned.

21.    **Efficient Realty & Development, LLC** (hereinafter referred to as "Efficient Realty PA") was a Limited Liability Company that was created in Pennsylvania on or about November 16, 2001.  The organizers were defendant **GREGORY ORR** and his wife, Janine Orr, who listed their address as 10571 N.W. 66th Street, Parkland, Florida.  The owners and their percentage ownership interests were J & G Associates, LLC (50.1%), Longhill Holdings, LLC (20%), CAE Enterprises, Inc. (10%), Bayhill Development, LLC (10%), and Property Futures, Inc. (9.9%).

The OakBrook Property

22.    On or about September 18, 2003, ADT sold the OakBrook property to OakBrook Properties, LLC, which simultaneously leased the property back to ADT, which then became a tenant in the property that it previously had owned.

23.    **OakBrook Properties, LLC** was a Limited Liability Company that was created in Illinois on or about March 6, 2002.  The sole Manager of OakBrook Properties, LLC was 111 Windsor, Inc. until June 27, 2002, when it was replaced as Manager by 111 Windsor LLC.  The owners and their percentage ownership interests were GJO Associates, LLC (60%), Longhill Holdings, LLC (30%), and defendant **ROBERT GANNON** (10% in 2003) and subsequently

7

Gannon Family Company, LLC (10% in 2004 and thereafter).

24.    **GJO Associates LLC** was a Limited Liability Company that was created in Illinois on or about November 14, 2002. Defendant **GREGORY ORR** was the Manager. The owners and their percentage ownership interests were KCGF Associates, LLC (50%), defendant **GREGORY ORR** (41.67%), and subsequently Orr Family Management Company, LLC (41.67% in 2004 and thereafter), and PCL Properties LLC (8.33%).

25.    **Gannon Family Company, LLC** was a Limited Liability Company that was created in Florida on or about December 23, 2003. Mary Ellen Gannon, wife of defendant **ROBERT GANNON**, was the Manager and a Member. The principal place of business was listed as 1690 S.W. 2nd Avenue, Boca Raton, Florida, which was the address of defendant **ROBERT GANNON**.

Related Entities

26.    **Efficient Realty & Development Corp.,** (hereinafter referred to as "Efficient Realty Corp.") was a corporation that was created in Florida on or about August 2, 2001. Defendant **GREGORY ORR** was listed as Director, President, Secretary, and Treasurer in a filing with the Florida Department of State on August 2, 2001. Defendant **VINCENT ARTUSO** was listed as Director, President, Secretary, and Treasurer on filings with the Florida Department of State on May 1, 2003, April 28, 2004, and May 16, 2005. Defendant **JOHN ARTUSO** was listed as a Registered Agent on filings with the Florida Department of State on April 28, 2004 and May 16, 2005. The principal place of business was at times listed as 10571 N.W. 66th Street, Parkland, Florida, which was the address of defendant **GREGORY ORR**, and 3390 South Ocean Boulevard, Apartment 406, West Palm Beach, Florida, which was the address of defendant **VINCENT ARTUSO**. The owners and their percentage ownership interests were defendant **GREGORY ORR** (100% until on or about

8

March 8, 2002) and defendant **VINCENT ARTUSO** (100% from on or about March 8, 2002 and thereafter).

27.     **Atlantic Magazine Service, Inc.,** (hereinafter referred to as "AMS") was a corporation that was created in Florida on or about March 9, 2000. AMS was a telemarketing business that was engaged in the marketing of magazine subscriptions over the telephone. Defendant **JOHN ARTUSO** was a Director, President, and Registered Agent of AMS. Defendant **GREGORY ORR** was a manager at AMS. Defendant **ROBERT GANNON** was Vice President of AMS. AMS was at times located at 900 S.E. 8th Avenue, Suite 304 and Suite 103, Deerfield Beach, Florida; 1215 Wallace Drive, Suite 101, Delray Beach, Florida; and 2301 West Sample Road, Building 5, Suite 6A, Pompano Beach, Florida. AMS also conducted business under the names of other entities, including Community Reading Club, Community Reading Club of Deerfield Beach, and Community Reading Club of Delray Beach. The owners of AMS and their percentage ownership interests were defendant **JOHN ARTUSO** (100% in 2000 through 2003, and 66.666% in 2004 and thereafter) and defendant **GREGORY ORR** (33.334% in 2004 and thereafter).

28.     **V and G Marketing Consultants Corp.,** (hereinafter referred to as "V and G") was a corporation that was created in Florida on or about May 8, 2000. The incorporators were defendants **VINCENT ARTUSO** and **GREGORY ORR**. Defendant **VINCENT ARTUSO** was the Vice President. Defendant **GREGORY ORR** was a Director, President, and Registered Agent in 2000 through 2006. Defendant **JOHN ARTUSO** was Director, President, Secretary, Treasurer, and Registered Agent in 2007. The principal place of business of V and G was at times located at 900 S.E. 8th Avenue, Deerfield Beach, Florida; 1215 Wallace Drive, Delray Beach, Florida; and 2301 West Sample Road, Building 4, Suite 3A, Pompano Beach, Florida. The owners and their

9

percentage ownership interests were defendant **VINCENT ARTUSO** (50%) and defendant **GREGORY ORR** (50%).

## COUNT 1
(RICO Conspiracy, 18 U.S.C. 1962(d))

1.    The General Allegations set forth in paragraphs one (1) through twenty-eight (28) of

this Superseding Indictment are realleged and incorporated herein by reference.

### The RICO Conspiracy

2.    From in or about the summer of 2001, through the date of the return of this

Superseding Indictment, in Broward County in the Southern District of Florida, and elsewhere,

defendants

**VINCENT F. ARTUSO,**
**aka "Vinnie,"**
**JOHN VINCENT ARTUSO,**
**GREGORY ORR,**
**ROBERT M. GANNON, and**
**PHILIP EDWARD FORGIONE,**
**aka "Fip," aka "Flip,"**

and others known and unknown to the Grand Jury, being persons employed by and associated with

an enterprise, which enterprise engaged in, and the activities of which affected, interstate and foreign

commerce, unlawfully and knowingly combined, conspired, confederated and agreed to conduct and

participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern

of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and (5).

### The Enterprise

3.    From in or about the summer of 2001, through the date of the return of this

Superseding Indictment, in Broward County in the Southern District of Florida, and elsewhere, a

South Florida crew of the Gambino Family constituted an enterprise, which is referred to in

paragraph two (2) above, within the meaning of Title 18, United States Code, Section 1961(4), that

11

is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise was engaged in, and its activities affected, interstate and foreign commerce.

4.    Defendant **VINCENT ARTUSO** was at various times a soldier, an acting capo, and a capo in the Gambino Family. Defendant **VINCENT ARTUSO** was the leader of the South Florida crew of the Gambino Family, which is the enterprise referred to in paragraphs two (2) and three (3) above. Defendant **VINCENT ARTUSO** supervised and directed the criminal activities of the other members of the enterprise, and received a share of the proceeds of those criminal activities.

5.    Defendants **JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** were, together with others known and unknown to the grand jury, members of the South Florida crew of the Gambino Family, which is the enterprise referred to in paragraphs two (2) and three (3) above, and were non-member associates of the Gambino Family, and engaged in criminal acts on behalf of the enterprise and under the supervision and direction of defendant **VINCENT ARTUSO**.

### The Purpose and Object of the Enterprise

6.    The principal purpose and object of the enterprise was to make money for the members and associates of the enterprise through various criminal activities, as set forth in paragraph seven (7) below.

### The Pattern of Racketeering Activity

7.    The pattern of racketeering activity through which the defendants and their co-conspirators agreed to conduct and participate, directly and indirectly, in the conduct of the affairs

12

of the enterprise consisted of multiple acts indictable under the following laws:

      a.     Mail fraud, in violation of Title 18, United States Code, Section 1341.

      b.     Wire fraud, in violation of Title 18, United States Code, Section 1343.

      c.     Laundering of monetary instruments and conspiracy to do so, in violation of Title 18, United States Code, Section 1956.

      d.     Engaging in monetary transactions in property derived from specified unlawful activity and conspiracy to do so, in violation of Title 18, United States Code, Sections 1957 and 1956(h).

      e.     Interstate travel or transportation in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952.

<u>The Manner and Means of the Conspiracy</u>

8.     It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

9.     It was further part of the conspiracy that defendant **VINCENT ARTUSO** would oversee, supervise, and direct the illegal activities of other members of the enterprise on behalf of the Gambino Family, and would receive a share of the illegal proceeds generated from the mail fraud, wire fraud, and money laundering activities, among other crimes.

10.     It was further part of the conspiracy that defendant **VINCENT ARTUSO** would use his position and reputation as an organized crime member to cause other persons to engage in conduct that would conceal his own involvement in illegal activities.

11.     It was further part of the conspiracy that defendants **JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** were non-member associates of a South

Florida crew of the Gambino Family and would engage in criminal acts on behalf of the enterprise under the supervision and direction of defendant **VINCENT ARTUSO**.

12.     It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR**, and **ROBERT GANNON** and other persons would acquire office space for the purpose of operating AMS, a magazine subscription telemarketing business.

13.     It was further part of the conspiracy that defendant **VINCENT ARTUSO** would solicit other persons to act as fronts to assist in obtaining refinancing of property owned by AMS, and to assist in obtaining financing and purchasing additional property, all the while concealing his own involvement in the financial and real estate transactions.

14.     It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR**, and **ROBERT GANNON** would use proceeds that AMS obtained from its customers to make payments to V and G, which would then use those funds to pay mortgage finance expenses in order to facilitate a scheme to defraud ADT and its stockholders.

15.     It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in real estate transactions with ADT, knowing and agreeing that Larry Horton, in his position as Vice President of Planning and Implementation at ADT, would violate the fiduciary duty he owed to ADT and its stockholders by agreeing to sell real estate properties owned by ADT to companies owned or controlled by defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE**, among other persons, at purchase prices substantially below fair market value, and by agreeing to simultaneously execute leases whereby those companies would lease those properties back to ADT at lease payments substantially above

fair market value, all to the financial detriment of ADT and its stockholders.

  16. It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE**, among other persons, would give Larry Horton and Janie Marie Horton a large percentage ownership interest in the properties purchased from, and leased back to, ADT.

  17. It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE**, and Larry Horton would conceal from ADT and its stockholders the substantial personal financial interest of Larry Horton and Janie Marie Horton in the properties purchased from, and leased back to, ADT by using multiple limited liability companies and corporations in the real estate transactions, instead of using the actual names of Larry Horton and Janie Marie Horton, as purchasers from, and simultaneous lessors back to, ADT.

  18. It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in a real estate transaction with ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would sell ADT's Pompano Beach property to Efficient Realty FL for approximately $1,290,000.00, which was substantially below the fair market value of that property.

  19. It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in a real estate transaction with ADT in which Efficient Realty FL would lease the Pompano Beach property back to ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would execute a commercial lease agreement that required ADT to pay for the taxes, utilities, repairs,

maintenance, and insurance for the property, and pursuant to which ADT would make monthly lease payments, with automatic annual increases over the term of the fifteen-year lease, which payments were substantially above the fair market value of the leasehold interest.

20.    It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE**, and Larry Horton would conceal from ADT and its stockholders that, as a result of the sale and leaseback transactions, Larry Horton and Janie Marie Horton would jointly own approximately 30% of the Pompano Beach property, and would jointly receive approximately 30% of the fraud proceeds paid by ADT to the co-conspirators.

21.    It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in a real estate transaction with ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would sell ADT's Palm Harbor property to Westmore Properties, LLC for approximately $684,900.00, which was substantially below the fair market value of that property.

22.    It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in a real estate transaction with ADT in which Westmore Properties, LLC would lease the Palm Harbor property back to ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would execute a commercial lease agreement that required ADT to pay for the taxes, utilities, repairs, maintenance, and insurance for the property, and pursuant to which ADT would make monthly lease payments, with automatic annual increases over the term of the fifteen-year lease, which payments were substantially above the fair market value of the leasehold interest.

23.     It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE**, and Larry Horton would conceal from ADT and its stockholders that, as a result of the sale and leaseback transactions, Larry Horton and Janie Marie Horton would jointly own approximately 30% of the Palm Harbor property, and would jointly receive approximately 30% of the fraud proceeds paid by ADT to the co-conspirators.

24.     It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in a real estate transaction with ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would sell ADT's Lancaster property to Efficient Realty PA for approximately $840,900.00, which was substantially below the fair market value of that property.

25.     It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in a real estate transaction with ADT in which Efficient Realty PA would lease the Lancaster property back to ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would execute a commercial lease agreement that required ADT to pay for the taxes, utilities, repairs, maintenance, and insurance for the property, and pursuant to which ADT would make monthly lease payments, with automatic annual increases over the term of the fifteen-year lease, which payments were substantially above the fair market value of the leasehold interest.

26.     It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE**, and Larry Horton would conceal from ADT and its stockholders that, as a result of the sale and leaseback transactions,

Larry Horton and Janie Marie Horton would jointly own approximately 30% of the Lancaster property, and would jointly receive approximately 30% of the fraud proceeds paid by ADT to the co-conspirators.

27.    It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR,** and **ROBERT GANNON** would engage in a real estate transaction with ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would sell ADT's OakBrook property to OakBrook Properties, LLC for approximately $2,100,000.00, which was substantially below the fair market value of that property.

28.    It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR,** and **ROBERT GANNON** would engage in a real estate transaction with ADT in which OakBrook Properties, LLC would lease the OakBrook property back to ADT, knowing and agreeing that Larry Horton, acting on behalf of ADT, would execute a commercial lease agreement that required ADT to pay for the taxes, utilities, repairs, maintenance, and insurance for the property, and pursuant to which ADT would make monthly lease payments, with automatic annual increases over the term of the fifteen-year lease, which payments were substantially above the fair market value of the leasehold interest.

29.    It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR,** and **ROBERT GANNON**, and Larry Horton would conceal from ADT and its stockholders that, as a result of the sale and leaseback transactions, Larry Horton and Janie Marie Horton would jointly own approximately 30% of the OakBrook property, and would jointly receive approximately 30% of the fraud proceeds paid by ADT to the co-conspirators.

30.    It was further part of the conspiracy that in order to conceal the participation of

18

defendant **VINCENT ARTUSO**, the conspirators would funnel his share of the monthly lease payments received from ADT through Longhill Holdings, LLC to Efficient Realty & Development Corp., which was owned by defendant **VINCENT ARTUSO**.

31.    It was further part of the conspiracy that in order to conceal the participation of defendant **PHILIP EDWARD FORGIONE**, the conspirators would funnel his share of the monthly lease payments received from ADT through a front, CAE Enterprises, Inc., which was owned by Philip R. Forgione, the son of defendant **PHILIP EDWARD FORGIONE**.

32.    It was further part of the conspiracy that defendants **VINCENT ARTUSO, JOHN ARTUSO, GREGORY ORR, ROBERT GANNON**, and **PHILIP FORGIONE** would engage in conduct designed to prevent detection by law enforcement officials of their identities, their illegal activities, and the disposition of their illegal proceeds.

33.    It was further part of the conspiracy that defendants **VINCENT ARTUSO** and **GREGORY ORR** would use defendant **VINCENT ARTUSO's** position and reputation as an organized crime member to intimidate other persons in order to coerce them to engage in activities beneficial to the enterprise, and to prevent them from cooperating with law enforcement officials.

All in violation of Title 18, United States Code, Section 1962(d).

19

## COUNTS 2 to 10
(Mail Fraud, 18 U.S.C. 1341)

### Introduction

1.     The General Allegations set forth in paragraphs one (1) through twenty-eight (28) of this Superseding Indictment are realleged and incorporated herein by reference.

### The Purpose and Object of the Scheme and Artifice

2.     The purpose and object of the scheme and artifice was to enrich the defendants and their co-conspirators by defrauding ADT of money and commercial real estate property.

### The Scheme and Artifice

3.     The allegations set forth in paragraphs nine (9) through thirty-three (33) of the Manner and Means section of Count One (1) of this Superseding Indictment are realleged and incorporated herein by reference as the scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises.

### The Delivery by Mail and Commercial Interstate Carrier

4.     From in or about August 2001, and continuing through January 22, 2008, in Broward County in the Southern District of Florida, and elsewhere, defendants

**VINCENT F. ARTUSO,**
**aka "Vinnie,"**
**JOHN VINCENT ARTUSO,**
**GREGORY ORR,**
**ROBERT M. GANNON, and**
**PHILIP EDWARD FORGIONE,**
**aka "Fip," aka "Flip,"**

and other persons known and unknown to the Grand Jury, having devised and intending to devise the above-described scheme and artifice to defraud and for obtaining money by means of materially

false and fraudulent pretenses, representations, and promises, for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly caused to be delivered by mail according to the directions thereon, the matters and things particularly described in each count set forth below.

| Count | Approximate Date | Description of Matter and Thing Delivered |
|---|---|---|
| 2 | January 23, 2003 | Check no. 1133682 for $42,004.82 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Efficient Realty FL in the Southern District of Florida. |
| 3 | January 23, 2003 | Check no. 1133683 for $21,630.00 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Efficient Realty PA in the Southern District of Florida. |
| 4 | January 23, 2003 | Check no. 1133995 for $21,895.06 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Westmore Properties, LLC in the Southern District of Florida. |
| 5 | February 27, 2003 | Check no. 1151626 for $42,004.82 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Efficient Realty FL in the Southern District of Florida. |
| 6 | February 27, 2003 | Check no. 1151627 for $25,351.75 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Efficient Realty PA in the Southern District of Florida. |
| 7 | March 28, 2003 | Check no. 1165754 for $42,004.82 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Efficient Realty FL in the Southern District of Florida. |
| 8 | March 28, 2003 | Check no. 1165755 for $21,630.00 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Efficient Realty PA in the Southern District of Florida. |
| 9 | April 24, 2003 | Check no. 1178941 for $42,004.82 from ADT in Aurora, Colorado, delivered by the United States Postal Service to Efficient Realty FL in the Southern District of Florida. |

10    April 24, 2003          Check no. 1178942 for $21,630.00 from ADT in Aurora, Colorado,
                              delivered by the United States Postal Service to Efficient Realty PA
                              in the Southern District of Florida.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 11 to 25
(Wire Fraud, 18 U.S.C. 1343)

### Introduction

1.      The General Allegations set forth in paragraphs one (1) through twenty-eight (28) of this Superseding Indictment are realleged and incorporated herein by reference.

### The Purpose and Object of the Scheme and Artifice

2.      The purpose and object of the scheme and artifice was to enrich the defendants and their co-conspirators by defrauding ADT of money and commercial real estate property.

### The Scheme and Artifice

3.      The allegations set forth in paragraphs nine (9) through thirty-three (33) of the Manner and Means section of Count One (1) of this Superseding Indictment are realleged and incorporated herein by reference as the scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises.

### The Wire Communication

4.      From in or about August 2001, and continuing through January 22, 2008, in Broward County in the Southern District of Florida, and elsewhere, defendants

**VINCENT F. ARTUSO,**
**aka "Vinnie,"**
**JOHN VINCENT ARTUSO,**
**GREGORY ORR,**
**ROBERT M. GANNON, and**
**PHILIP EDWARD FORGIONE,**
**aka "Fip," aka "Flip,"**

and other persons known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent

23

pretenses, representations, and promises, for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, certain signs, signals, and sounds particularly described in each count set forth below.

| Count | Approximate Date | Description of Signs, Signals, and Sounds Transmitted |
|-------|------------------|-------------------------------------------------------|
| 11 | July 21, 2003 | Electronic Funds Transfer of $42,004.82 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Union Bank of Florida Account No. 206702 of Efficient Realty FL in the Southern District of Florida. |
| 12 | July 21, 2003 | Electronic Funds Transfer of $21,630.00 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Union Bank of Florida Account No. 206680 of Efficient Realty PA in the Southern District of Florida. |
| 13 | July 21, 2003 | Electronic Funds Transfer of $21,895.06 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Bank Atlantic Account No. 0055606725 of Westmore Properties, LLC in the Southern District of Florida. |
| 14 | March 30, 2004 | Electronic Funds Transfer of $43,054.94 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Union Bank of Florida Account No. 206702 of Efficient Realty FL in the Southern District of Florida. |
| 15 | March 30, 2004 | Electronic Funds Transfer of $22,278.90 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Union Bank of Florida Account No. 206680 of Efficient Realty PA in the Southern District of Florida. |
| 16 | March 30, 2004 | Electronic Funds Transfer of $22,341.14 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Bank Atlantic Account No. 0055606725 of Westmore Properties, LLC in the Southern District of Florida. |
| 17 | March 29, 2005 | Electronic Funds Transfer of $44,131.31 from NationsBank/Bank of |

America Account No. 3299943904 of ADT in Virginia to Gulfstream Business Bank Account No. 0150015355 of Efficient Realty FL in the Southern District of Florida.

| 18 | March 29, 2005 | Electronic Funds Transfer of $22,947.27 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Gulfstream Business Bank Account No. 0150015364 of Efficient Realty PA in the Southern District of Florida. |

| 19 | March 29, 2005 | Electronic Funds Transfer of $23,228.47 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Bank Atlantic Account No. 0055606725 of Westmore Properties, LLC in the Southern District of Florida. |

| 20 | March 28, 2006 | Electronic Funds Transfer of $45,447.97 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Gulfstream Business Bank Account No. 0150015355 of Efficient Realty FL in the Southern District of Florida. |

| 21 | March 28, 2006 | Electronic Funds Transfer of $23,635.69 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Gulfstream Business Bank Account No. 0150015364 of Efficient Realty PA in the Southern District of Florida. |

| 22 | March 28, 2006 | Electronic Funds Transfer of $23,925.34 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Bank Atlantic Account No. 0055606725 of Westmore Properties, LLC in the Southern District of Florida. |

| 23 | March 27, 2007 | Electronic Funds Transfer of $46,514.82 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Gulfstream Business Bank Account No. 0150015355 of Efficient Realty FL in the Southern District of Florida. |

| 24 | March 27, 2007 | Electronic Funds Transfer of $24,344.76 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Gulfstream Business Bank Account No. 0150015364 of Efficient Realty PA in the Southern District of Florida. |

| 25 | March 27, 2007 | Electronic Funds Transfer of $24,762.71 from NationsBank/Bank of America Account No. 3299943904 of ADT in Virginia to Bank Atlantic Account No. 0055606725 of Westmore Properties, LLC in the Southern District of Florida. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 26
(Money Laundering Conspiracy, 18 U.S.C. 1956(h))

### Introduction

1.    The General Allegations set forth in paragraphs one (1) through twenty-eight (28) of

this Superseding Indictment are realleged and incorporated herein by reference.

### The Conspiracy

2.    From in or about August 2001, and continuing through January 22, 2008, in Broward

County in the Southern District of Florida, and elsewhere, defendants

**VINCENT F. ARTUSO,**
**aka "Vinnie,"**
**JOHN VINCENT ARTUSO,**
**GREGORY ORR,**
**ROBERT M. GANNON, and**
**PHILIP EDWARD FORGIONE,**
**aka "Fip," aka "Flip,"**

knowingly conspired, confederated, and agreed with each other and with other persons known and

unknown to the Grand Jury to commit offenses against the United States, that is, to violate Title 18,

United States Code, Sections 1956(a)(1)(B)(i) and 1957.

### The Purpose and Object of the Conspiracy

3.    It was the purpose and object of the conspiracy to:

a.    knowingly and willfully conduct and attempt to conduct financial transactions

affecting interstate and foreign commerce, that is, issuing checks drawn upon, and transferring funds

from, bank accounts containing the proceeds of specified unlawful activity, that is, mail fraud in

violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18,

United States Code, Section 1343, and knowing the transactions were designed in whole or in part

27

to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and knowing that the property involved represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

                b.      knowingly and willfully engage and attempt to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property that was of a value greater than $10,000, which was from specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

28

## COUNTS 27 to 41
(Money Laundering, 18 U.S.C. 1956(a)(1)(B)(i))

1.     The General Allegations set forth in paragraphs one (1) through twenty-eight (28) of this Superseding Indictment are realleged and incorporated herein by reference.

2.     On or about the dates enumerated as to each of these Counts of the Superseding Indictment, in the Southern District of Florida, and elsewhere, defendants

**VINCENT F. ARTUSO,**
**aka "Vinnie,"**
**JOHN VINCENT ARTUSO,**
**GREGORY ORR,**
**ROBERT M. GANNON, and**
**PHILIP EDWARD FORGIONE,**
**aka "Fip," aka "Flip,"**

knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly and willfully conducted and attempted to conduct financial transactions, and aided and abetted, counseled, commanded, induced, and caused the conducting and attempt to conduct financial transactions, affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity; the financial transactions being particularly described in each count set forth below.

| Count | Approximate Date | Description of Financial Transaction |
|-------|------------------|--------------------------------------|
| 27 | February 3, 2003 | Deposit of check no. 1042 for $5,570.60 issued by Longhill Holdings, LLC into the Union Bank of Florida account of Efficient Realty & Development Corp. for the benefit of defendant **VINCENT ARTUSO**. |

| 28 | February 4, 2003 | Deposit of check no. 1025 for $16,054.68 issued by J & G Associates, LLC into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton. |
| 29 | October 8, 2003 | Deposit of check no. 1253 issued by J & G Associates, LLC and check nos. 1001 and 1010 issued by GJO Associates LLC, which checks totaled $262,277.46, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton. |
| 30 | December 1, 2003 | Deposit of check no. 1105 for $5,570.06 issued by Longhill Holdings, LLC into the Union Bank of Florida account of Efficient Realty & Development Corp. for the benefit of defendant **VINCENT ARTUSO**. |
| 31 | May 5, 2004 | Deposit of check nos. 1284 and 1291 issued by J & G Associates, LLC, which checks totaled $32,849.70, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton. |
| 32 | May 30, 2004 | Deposit of check no. 1337 issued by Efficient Realty FL, check no. 1330 issued by Efficient Realty PA, and check no. 3113 issued by Westmore Properties, LLC, which checks totaled $11,591.90, into the Union Bank of Florida account of Efficient Realty & Development Corp. for the benefit of defendant **VINCENT ARTUSO**. |
| 33 | October 1, 2004 | Deposit of check no. 1155 for $5,795.95 issued by Longhill Holdings, LLC into the Union Bank of Florida account of Efficient Realty & Development Corp. for the benefit of defendant **VINCENT ARTUSO**. |
| 34 | November 9, 2004 | Deposit of check no. 2018 issued by J & G Associates, LLC and check no. 1069 issued by GJO Associates LLC, which checks totaled $18,204.25, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton. |
| 35 | December 3, 2004 | Deposit of check no. 1169 for $5,685.50 issued by Longhill Holdings, LLC into the Union Bank of Florida account of Efficient Realty & Development Corp. for the benefit of defendant **VINCENT ARTUSO**. |
| 36 | April 15, 2005 | Deposit of check no. 1013 issued by J & G Associates, LLC and check no. 1012 issued by GJO Associates LLC, which checks totaled $18,899.09, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton. |

37  November 2, 2005  Deposit of check nos. 1051 and 1056 issued by J & G Associates, LLC and check nos. 1032 and 1036 issued by GJO Associates LLC, which checks totaled $37,855.70, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton.

38  April 13, 2006  Deposit of check no. 1097 issued by J & G Associates, LLC and check no. 1056 issued by GJO Associates LLC, which checks totaled $19,642.00, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton.

39  November 17, 2006  Deposit of check no. 1123 issued by J & G Associates, LLC and check no. 1081 issued by GJO Associates LLC, which checks totaled $19,671.75, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton.

40  March 21, 2007  Deposit of check no. 1140 issued by J & G Associates, LLC and check no. 1100 issued by GJO Associates LLC, which checks totaled $20,439.32, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton.

41  April 10, 2007  Deposit of check no. 1146 issued by J & G Associates, LLC and check no. 1104 issued by GJO Associates LLC, which checks totaled $19,189.82, into the Wachovia Bank account of KCGF Associates, LLC for the benefit of Larry Horton.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## **FORFEITURE**

### Forfeiture Pursuant to 18 U.S.C. 1963

1.      The allegations contained in Count One (1) of this Superseding Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count One (1) of this Superseding Indictment.

2.      Defendants

**VINCENT F. ARTUSO,**
**aka "Vinnie,"**
**JOHN VINCENT ARTUSO,**
**GREGORY ORR,**
**ROBERT M. GANNON, and**
**PHILIP EDWARD FORGIONE,**
**aka "Fip," aka "Flip,"**

a.      have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.      have an interest in, security of, claims against, and property and contractual rights that afford a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963

32

(a)(2);

       c.    have property constituting and derived from proceeds obtained, directly and

indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962,

which property is subject to forfeiture to the United States pursuant to Title 18, United States Code,

Section 1963(a)(3),

       3.    The interests of the defendants subject to forfeiture to the United States pursuant to

Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include, but are not limited to:

       a.    at least $7,000,000.00, including, but not limited to, all interests in, and

contents of, the following accounts:

1. Bank Atlantic Account No. 0055606725 in the name of Westmore Properties, LLC.
2. Gulfstream Business Bank Account No. 0150015355 in the name of Efficient Realty & Development, L.L.C. (Efficient Realty FL).
3. Gulfstream Business Bank Account No. 0150015364 in the name of Efficient Realty & Development, LLC (Efficient Realty PA).
4. Gulfstream Business Bank Account No. 0150015453 in the name of GJO Associates LLC.
5. Gulfstream Business Bank Account No. 0150015444 in the name of J & G Associates, LLC.
6. Gulfstream Business Bank Account No. 0150015603 in the name of J.V.A. Family Company, LLC.
7. Gulfstream Business Bank Account No. 0150015505 in the name of Longhill Holdings, LLC.
8. Gulfstream Business Bank Account No. 0150015417 in the name of Orr Family Management Company, LLC.
9. Colonial Bank Account No. 213478 in the name of Property Futures, Inc.
10. Penn Security Bank & Trust Company Account No. 5-283-009-5 in the name of CAE Enterprises, Inc.
11. TCF National Bank Account No. 7875689256 in the name of OakBrook Properties, LLC.

       b.    All interests in the real estate properties at the following addresses:

1.  2801 Gateway Drive, Pompano Beach, Florida
2.  32100 U.S. Highway 19 North, Palm Harbor, Florida
3.  3040 Industry Drive, East Hempfield, Lancaster County, Pennsylvania
4.  111 Windsor Drive, Oak Brook, Illinois

c.  All interests in the following limited liability companies and corporations:

1.  CAE Enterprises, Inc.
2.  Efficient Realty & Development Corp.
3.  Efficient Realty & Development, L.L.C. (Efficient Realty FL)
4.  Efficient Realty & Development, LLC (Efficient Realty PA)
5.  Gannon Family Company, LLC
6.  GJO Associates LLC
7.  J & G Associates, LLC
8.  OakBrook Properties, LLC
9.  Orr Family Management Company, LLC
10. Property Futures, Inc.
11. Westmore Properties, LLC

4.  If any property being subject to forfeiture pursuant to Title 18, United States Code,

Section 1963, as a result of any act or omission of the defendants –

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value, or;

e.  has been commingled with other property that cannot be divided without

difficulty;

it is the intent of the United States of America, pursuant to Title 18, United States Code, Section

1963(m), to seek forfeiture of any other property of the defendants up to the value of any property

described in paragraph three, including, but not limited to, the properties at the following addresses:

1.  3390 South Ocean Boulevard, Unit 406, Palm Beach, Florida
2.  1131 Yacht Club Way, Unit 207, Hypoluxo, Florida

34

3.      6710 N.W. 101st Terrace, Parkland, Florida
4.      1690 S.W. 2nd Avenue, Boca Raton, Florida
5.      1315 North Webster Avenue, Dunmore, Pennsylvania

5.      The above-named defendants, and each of them, are jointly and severally liable for

the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

<u>Forfeiture Pursuant to 18 U.S.C. 982</u>

6.      The allegations contained in Counts Twenty-Six (26) through Forty-One (41) of this

Superseding Indictment are hereby realleged and incorporated herein by reference for the purpose

of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

7.      Defendants

**VINCENT F. ARTUSO,**
**aka "Vinnie,"**
**JOHN VINCENT ARTUSO,**
**GREGORY ORR,**
**ROBERT M. GANNON, and**
**PHILIP EDWARD FORGIONE,**
**aka "Fip," aka "Flip,"**

shall forfeit to the United States the following property:

        a.      any property, real or personal, involved in the offenses in violation of Title

18, United States Code, Sections 1956 and 1957 as alleged in Counts Twenty-Six (26) through

Forty-One (41) of this Superseding Indictment, and any property traceable to such property, all in

accordance with Title 18, United States Code, Section 982(a)(1).

8.      Such forfeitable property shall include, but is not limited to, the property set forth

above in paragraph three (3) of the section relating to forfeiture pursuant to 18 U.S.C. 1963, which

is property involved in money laundering.

9.      The defendants are jointly and severally liable for the forfeiture obligations alleged

above.

10.     If any property being subject to forfeiture pursuant to Title 18, United States Code,

Section 982, as a result of any act or omission of the defendants –

        a.      cannot be located upon the exercise of due diligence;

36

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

    d.     has been substantially diminished in value, or;

    e.     has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of any property described in paragraph eight (8), including, but not limited to, the residences at the addresses set forth above in paragraph four (4).

All pursuant to Title 18, United States Code, Section 982.


_____
R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY


_____
BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY


_____
WILLIAM T. SHOCKLEY
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

VINCENT F. ARTUSO, et al.,

           Defendant.
_____/

CASE NO.    08-60014-CR-MIDDLEBROOKS(s)

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

| | | |
|---|---|---|
| _____ Miami | _____ Key West | |
| _X_ FTL | _____ WPB | _____ FTP |

New Defendant(s)    Yes _____  No _X_
Number of New Defendants    _____
Total number of counts    _41_

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    _No_
   List language and/or dialect    _____

4. This case will take    _15_    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

| | | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _X_ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | _X_ |
| V | 61 days and over | _____ | | |

6. Has this case been previously filed in this District Court? (Yes or No)    _Yes_
   If yes:
   Judge:  _Donald M. Middlebrooks_    Case No.  _08-60014-CR-MIDDLEBROOKS_
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    _No_
   If yes:
   Magistrate Case No.  _____
   Related Miscellaneous numbers:  _____
   Defendant(s) in federal custody as of  _____
   Defendant(s) in state custody as of  _____
   Rule 20 from the  _____  District of  _____

   Is this a potential death penalty case? (Yes or No)    _No_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes  _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _X_ Yes  _____ No

              _William T. Shockley_
WILLIAM T. SHOCKLEY
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No./Court No.  A5500088

*Penalty Sheet(s) attached                                REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:  VINCENT F. ARTUSO

Count #:  1          Rico Conspiracy, 18 U.S.C. 1962(d)

---

*Max. Penalty:      20-year term of imprisonment

Counts #:  2-10     Mail Fraud, 18 U.S.C. 1341

---

*Max. Penalty:      20-year term of imprisonment

Counts #:  11-25    Wire Fraud, 18 U.S.C. 1343

---

*Max. Penalty:      20-year term of imprisonment

Count #:  26        Money Laundering Conspiracy, 18 U.S.C. 1956(h)

---

*Max. Penalty:      20-year term of imprisonment

Counts #:  27-41    Money Laundering, 18 U.S.C. 1956(a)(1)(B)(i)

---

*Max. Penalty:      20-year term of imprisonment

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   JOHN VINCENT ARTUSO

Count #:   1          Rico Conspiracy, 18 U.S.C. 1962(d)

---

*Max. Penalty:       20-year term of imprisonment

Counts #:   2-10     Mail Fraud, 18 U.S.C. 1341

---

*Max. Penalty:       20-year term of imprisonment

Counts #:   11-25    Wire Fraud, 18 U.S.C. 1343

---

*Max. Penalty:       20-year term of imprisonment

Count #:   26        Money Laundering Conspiracy, 18 U.S.C. 1956(h)

---

*Max. Penalty:       20-year term of imprisonment

Counts #:   27-41    Money Laundering, 18 U.S.C. 1956(a)(1)(B)(i)

---

*Max. Penalty:       20-year term of imprisonment

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   GREGORY ORR

Count #:  1         Rico Conspiracy, 18 U.S.C. 1962(d)

---

*Max. Penalty:      20-year term of imprisonment

---

Counts #:  2-10     Mail Fraud, 18 U.S.C. 1341

---

*Max. Penalty:      20-year term of imprisonment

---

Counts #:  11-25    Wire Fraud, 18 U.S.C. 1343

---

*Max. Penalty:      20-year term of imprisonment

---

Count #:  26        Money Laundering Conspiracy, 18 U.S.C. 1956(h)

---

*Max. Penalty:      20-year term of imprisonment

---

Counts #:  27-41    Money Laundering, 18 U.S.C. 1956(a)(1)(B)(i)

---

*Max. Penalty:      20-year term of imprisonment

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  ROBERT M. GANNON

Count #:  1        Rico Conspiracy, 18 U.S.C. 1962(d)

---

*Max. Penalty:     20-year term of imprisonment

Counts #:  2-10    Mail Fraud, 18 U.S.C. 1341

---

*Max. Penalty:     20-year term of imprisonment

Counts #:  11-25   Wire Fraud, 18 U.S.C. 1343

---

*Max. Penalty:     20-year term of imprisonment

Count #:  26       Money Laundering Conspiracy, 18 U.S.C. 1956(h)

---

*Max. Penalty:     20-year term of imprisonment

Counts #:  27-41   Money Laundering, 18 U.S.C. 1956(a)(1)(B)(i)

---

*Max. Penalty:     20-year term of imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  PHILIP EDWARD FORGIONE

Count #:  1        Rico Conspiracy, 18 U.S.C. 1962(d)

---

*Max. Penalty:     20-year term of imprisonment

---

Counts #:  2-10    Mail Fraud, 18 U.S.C. 1341

---

*Max. Penalty:     20-year term of imprisonment

---

Counts #:  11-25   Wire Fraud, 18 U.S.C. 1343

---

*Max. Penalty:     20-year term of imprisonment

---

Count #:  26       Money Laundering Conspiracy, 18 U.S.C. 1956(h)

---

*Max. Penalty:     20-year term of imprisonment

---

Counts #:  27-41   Money Laundering, 18 U.S.C. 1956(a)(1)(B)(i)

---

*Max. Penalty:     20-year term of imprisonment

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**